Mr. Nelson, is that you? Yes, Your Honor. Douglas D. Nelson on behalf of the petitioners. All right. You may be wondering, Your Honors, why this case is still pending at the Ninth Circuit given the current conditions in Iraq. The reason is because there is a negative credibility finding in this case. And that severely damages the case because unless it's even though we were to reopen the case again, the judges in San Diego say, I found the person not credible the first time, so no matter the conditions in Iraq today, I still find the person not credible. And it creates more and more delays. It basically results in the Zeno's Paradox where we never hit the target. Let me ask what the I.J. found incredible and whether it's supported by substantial evidence because that's the key to this one. I agree, Your Honor. I don't believe substantial evidence supports the immigration judge's findings. In particular, I've detailed in my brief, for example, how the judge misunderstood the dates of my client's arrests. My client was arrested on April 11th and held in the ward and detained on April 17th and held in military custody where he was tortured and abused. And when you look at the dialogue that the judge had between the petitioner, it's clear that they were talking past each other. And it simply doesn't amount to an inconsistency worthy of denying the claim. What bothers me about it is credibility, among other things, turns upon the witness's demeanor. I mean, we've got a cold record of what was said, but who can say, how can we say that the immigration judge abused his discretion in saying, considering all the circumstances, I find that these inconsistencies and the way he dealt with them in his testimony make him a non-credible witness. I mean, credible, you know, the question, answer. But the judge sitting there looks and sees how the witness has asked this question and he looks nervous and he sort of starts to say something and then stops. All that is not shown by the record, but these are all factors that the trial judge takes into account in his credibility determination. I find it very difficult to say. Now, if you have the most obvious thing, this is an absurd question, but suppose if what the trial judge said was, I make this credibility determination because it's my experience that generally Swedes are more credible than Italians. Something like that. That's one thing. But where it turns on the witness's inconsistencies, how he explains away stuff, I find it very difficult to say that we can overturn that credibility determination and say, no, you are wrong in thinking this witness was not credible. We who haven't seen the witness, we think he should have been held credible. Understood, Your Honor. And the immigration judge clearly has the authority to address the respondent's demeanor in his credibility findings. Clearly the judge could have described the petitioner's behavior, that he was either nervous or that he did this or that or the other, and that leads the immigration judge to decide that his demeanor was not credible. But this judge did not do that. Oh, yes, he did. He said there were fluctuations in the way that Dogley gave his testimony. In other words, as I understood what he was saying, the way he responded, the way he even talked in his particular situation was different when confronted about the inconsistencies about the date of his arrest. That was exactly what he said. That was one of the reasons. Well, there's a bit of a give and play also in every one of these cases because we're going to have a third person, a translator, to interpret what the petitioner says and share that with the judge. And if you look at the transcript, it's my opinion, Your Honors, that although the translation was not faulty, you could see the translator struggle to get the words out, and they weren't always put in a grammatical order. I mean, there were many times jumbled as you could see the translator trying to find the words and put them together in a clear manner. Tell me exactly what was inconsistent and wrong about the dating, or what the judge thought was. Oh, I don't think there was an inconsistency, but what the judge thought was that the petitioner was giving different dates for the same arrest when, in fact, the petitioner was stating There were two arrests. That's exactly right. There were two different arrests, one after the other, and the petitioner was speaking about the same arrests. But that's not all that he said. I mean, in this particular situation, the IJ listed out what he thought the inconsistencies were. He said not only was there fluctuations in the testimony, but he failed to establish his identity. There were certainly falsified documents in leaving Iraq, but he couldn't even put it all together. That he testified his name did not match the Iraq papers, that his birthplace in some instances was in English, and yet was issued 13 to 15 years after his birth date, that there were inconsistencies about the date of birth on three different birth certificates, that Hannah was not the last name on the birth certificate, and the guy said that's because the government did it, and yet it wasn't the government who issued that birth certificate, it was the church, that there was problem about the document of the father's death, that it was questionable, that there was a problem about the document regarding the departure from Mexico, because it was one month, was it one month from the departure, or was it one day after he was in jail? Would he fail to produce easily cooperating testimony? His brother and his grandparents his uncles and aunts were right here and they didn't come. There was evidence about the treating of his family members, his mother and sister still being there, and him being over here. Well in fact I think there was one of his relatives in the courtroom, so I know that post 9-11, proof of identity is absolutely crucial to every person. Every case, and so that seems to be a problem here. Well in fact your honors, he gave specific testimony as to how names are made in Iraq, that you have your own name, then your father's name follows it, your grandfather's name, sometimes your great grandfather, and then there's sometimes a clan name, and he specifically stated that my Iraqi documents don't contain those names because that is Christian tradition and not what the government in Iraq expects. They shorten the names, and so that is why his name, his full name, which we disclosed completely on the application form, is longer than the name that he has on his identity documents. Also I think it's clear that the judge did engage in speculation in this case, and that particular problem, that particular problem which the judge found when he engaged in that speculation simply cannot be supported by circuit law. When he said that the petitioner should have been punished more harshly, or that this family should have been punished more harshly, that's clearly contrary to the holding in G.U.I. Ashcroft, that's G-U-I. I have about a minute and a half left, I'd like to reserve that for rebuttal if I may. You may. Good morning, Your Honors. May it please the Court. My name is Ann Tumai. I represent the United States. There are generally four different grounds on which the immigration judge denied petitioner's applications for asylum and withholding of removal, all of which are supported by the record here. In terms of the most crucial basis, that would be that the petitioner did not provide sufficiently credible evidence. And there are at least seven different problem areas with the evidence that he offered. As Your Honors have discussed with the petitioner, there were problems in terms of his identity, there were problems with the... That they were challenging it so that he would have called his brother if he'd known it was a real problem? Yes, Your Honor. And in fact, the identity issues were raised at the hearing, I believe it was December 19th, and then the immigration judge continued the hearing subsequent to that. And once that occurred, petitioner had the opportunity to call on additional witnesses, but he chose to do, to not do so, even though he testified that he had two uncles, two aunts, and a grandfather and grandmother who resided in the area. Now, if his brother had taken the stand, what would the government have asked him? Your Honor, there are various different areas in which the government or petitioner could have corroborated his claims of his identity, his name, his claim that his father and uncles had been killed by the Iraqi government. There were a number of different areas here which were identified as being problematic that could have been verified by whether it was the uncle who apparently, he stated, had left Iraq after his father's death. So the corroboration was... We have very limited authority, don't we, in reviewing credibility determinations? Yes, Your Honor. I mean, this is not as though we were reviewing a substantive determination by a trial judge. The trial judge said, I just don't find that this witness is believable. Yes, Your Honor. And in this court, its own precedent as well as the Supreme Court precedent recognizes that the court may not simply disagree with the immigration judge's finding or find that petitioner's arguments are persuasive. Rather, the court must review the record to determine if the evidence compels a finding that he was credible. Here, it does not. And this court's precedent under Wayne v. Ashcroft and Lee v. Ashcroft has acknowledged that as long as there's one ground that is supported by the record, that is sufficient to uphold the immigration judge's adverse credibility finding. It's incumbent upon the immigration judge to give his reasons for the individual not being credible. And it takes more than just saying, I don't believe him and I don't think that his demeanor is correct. Our law is very clear that you have to give substantial reasons as to why. And so that's what we're looking for in this record. Your Honor, yes, the case law does require that there be specific cogent reasons. And here, the immigration judge offered a plethora of them. And even then, the immigration judge took it a step further and recognized that at a minimum, if we have a problem here as far as the credibility and we don't know what to believe, then the immigration judge can require, as he did here, that easily available corroboration be provided. And there was and petitioner failed to offer that corroboration. On top of that, if the petitioner were assumed to be credible, the immigration judge further found that there wasn't sufficient evidence to establish that he had a well-founded fear of future persecution, particularly given that his mother and sister still resided in Iraq without a parent problem and that there was a fundamental change in country conditions in Iraq. And he hasn't disputed that. If anything, his concerns now are premised on the instability and general insecurity that is faced by all Iraqis and not just particular to petitioner. So any one of these grounds, whether it's in terms of his credibility or his statutory ineligibility, would suffice to uphold the denial of asylum and withholding. Do we have anything in the country reports that talks about the treatment of Chaldean Christians post 9-11? Your Honor, there's some general discussions, but I would specifically refer the Court to the government exhibits that were submitted at pages, that began on page 315 and go to 337. There was also an article. Forgive me, Your Honor, as I'm going to take a look at those, a specific article that stated that Iraqis who are Christians within the northern region of Iraq don't have a particular problem with persecution based on Christianity as a whole. If anything, there have been individuals who have been targeted, but possibly more along the lines of any political basis rather than a basis related to their religion. And as far as his religion is concerned. His mother and sister, as I understand it, are still in Iraq. Is that right? Yes, Your Honor. And there's been no evidence, at least, that they have been subjected to any persecution because of their Christian beliefs. Is there? No, Your Honor. And Petitioner has not ---- At least that's some evidence. Yes, Your Honor. That is evidence. And the Department of State report, his explanation that his sister and mother are not actually subject to any threats. Well, let me come back to one thing on the credibility determination, which I take it that even relatively minor inconsistencies in the testimony, as long as there are a number of them, could be enough to lead the trial judge properly to conclude that this is not a credible witness. I mean, if you've got a witness who tells a story, but he keeps changing it from time to time, and every time these inconsistencies are pointed out to him, he doesn't have a convincing explanation, such as how he was kept for 30 days after he got the notice in Mexico, but the next day presented himself to the border authorities. He couldn't explain those, and he tried to explain them, but in a way that it seems to me the immigration judge could reasonably say, I just don't believe what you're telling me. Your Honor, the government's position is that the answer is yes. And Congress recently enacted the Real ID amendments, which specifically state that all inconsistencies as a whole in the record can be applied in considering whether the Petitioner was incredible. However, there is some question in terms of the application to pre-Real ID Act cases, such as this one, because of the court's case law, where it focuses on matters that, for specific cogent reasons, must be premised on significant inconsistencies, those that go to the heart of the claim of asylum. Counsel, did Klayman ask for humanitarian asylum? Yes, Your Honor, he did. And why should we not go to that, even finding, even if we did not find the regular asylum? Your Honor, if the court were to reach that issue, the court first would have to assume that he's credible and that he has established past persecution. But notwithstanding, the persecution that he alleges does not arise to the level of atrocious or severe persecution that is required under Matador Chen in order to obtain humanitarian asylum. And his claims are premised on some beatings, and although unfortunate, those beatings were, or resulted in perhaps bruising and some redness, but that was the extent of it. The big thing that I wanted you to talk about was the standard of review, and in fact, as I understand the standard of review, in order for me to even get to that finding, I first of all have to overturn the IJ's ruling on credibility, then I have to overturn the IJ's ruling on past persecution, and then, at that point, I can then start to think about humanitarian asylum, correct? Your Honor, there's one more hurdle in addition to that. Your Honor's correct, but in addition, there's the hurdle of Your Honor would have to then find that there was a well-founded fear of persecution in light of the amount of changes in the country. Well, however, if, in fact, I overturn credibility and I overturn the IJ's finding as to past persecution, and he has a presumption to future persecution in the country, thereafter, the government has to come forward. It's their burden, then, to come forward and present some change in country conditions, particular to this particular individual, who then we would get to the humanitarian asylum, but if I find that he is credible, that he thereafter has suffered past persecution, the government has to come forward. He doesn't have to prove future persecution again. The government has to come to the party and say, conditions have changed. That's correct, isn't it? Yes, Your Honor. Thank you very much. There are a number of hurdles here, and Petitioner has not overcome them. Thank you. Anecdotally, you're not going to be seeing many more of these cases, at least cases after 2005. I've done these for 10 years, and the judges are no longer denying Christians asylum whether they're credible or not, unless it was done before Saddam Hussein's regime, but it's interesting to note that current country conditions do show that more than half the Christian population has fled the country. What page is that in the record? It is not in the record. Not in the record. Yes. But this Department of State has issued two specific papers called issue papers, solely for Christians, in 2005 and 2006, and based upon those two papers, the judges are finding that all Christians have a well-founded fear of future persecution. Is there any way for you to bring this to the attention of the agency? Yes, of course, through a motion to reopen, but we have not done that because of the credibility problem. Unfortunately, the board punted that issue, and it landed in your laps, and so we want a decision regarding credibility. So I suppose you can actually go back and still seek a motion to reopen based on the changed policy of the government? Yes. The battle is much easier if this court reverses the credibility finding. Well, I understand that, but... Yes, obviously, but even if you do uphold the credibility finding, it will probably take one and a half to two years of work, but as cases are going now, he will be approved. One thing that had occurred to me is that we've been reading in the paper that our government has committed to admitting a large number of Iraqis, and they haven't been able to process even a part of that group because apparently they've got plenty of applications, but apparently the processing of identity is very, very slow. This case is a little bit weird in that identity is the problem here. Thank you. Thank you. Case C, or excuse me, Case 04-74090, Dogley v. Mukasey, is now submitted.
judges: Fletcher, Smith, Friedman